**17-9627
SECT. H MAG. 4**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

2017 SEP 26 A 9:22

Howard Anthony Brown
And Belden Batiste
**Plaintiffs**

-Vs-

COMPLAINT FOR DAMAGES
AND INJUNCTIVE AND
DECLARATORY RELIEF

TOM SCHEDLER, in his official capacity as Secretary of State;
JEFF LANDRY, in his official capacity as Attorney General;
Judge JAMES F. MCKAY, III, Judge EDWIN LOMBARD,
Judge DANIEL L. DYSART, Judge ROSEMARY LEDET,
Judge PAULA A. BROWN and Judge KERN A. REESE,
in their official capacities
**Defendants**

EXPEDITED ACTION IN
RESPONSE IS REQUESTED

## JURISDICTION

1. This court has jurisdiction invoked under Public Law 89-110, The Voting Rights Act of 1965. This being an action involving election practices.

2. This court has subject matter jurisdiction over the parties on this action pursuant to Title 42 § 1973.

3. This court has jurisdiction to hear this case under 28 U.S.C. §1332. Based on the federal questions that arises under this issue.

## PARTIES

1. Plaintiff Howard Anthony Brown, is a forty six year old male. One of the People of the United States Republic and the Republic of Louisiana.

Fee 400.00
Process
X Dktd
CtRmDep
Doc. No.

1

2. Plaintiff Belden Batiste, is a forty three year old male. One of the People of the United States Republic and the Republic of Louisiana.

3. On information and belief, Defendant TOM SCHEDLER ("SCHEDLER") is the Secretary of State for the Corporation STATE OF LOUISIANA, at times material to this complaint.

4. On information and belief, Defendant JEFF LANDRY ("LANDRY") is the Attorney General for the Corporation STATE OF LOUISIANA, at times material to this complaint.

## STATEMENT OF FACTS

On July 12, 2017 both Plaintiffs' signed a State of Louisiana Notice of Candidacy Qualifying Form, for the October 14, 2017 Local Government Election. Mr. Brown was looking to fill the vacancy of the Orleans Parish Assessor's Office and Mr. Batiste was applying for the Council Seat for District D. Subsequently to signing the Notice of Candidacy challenges were made in objection. In the case of Mr. Brown, the blood brothers of Mr. ERROLL G. WILLIAMS, the person that presently occupies the office of Orleans Parish Assessor, one ADAM IRVIN and one CARL IRVIN on July 20, 2017 filed their objection in the Civil District Court for the parish of Orleans. Stating on page 2 of the petition, "Upon information and belief, that certification appearing at paragraph 8 of Mr. Brown's Notice of Candidacy is false."

On July 21, 2017 in the same District Court, a similar objection to Candidacy was filed against Mr. Batiste. Also, making reference to paragraph 8, of the Notice of Candidacy. Which states, "If I am a candidate for any office other than United States senator or representative in congress, that for each of the previous five tax years, I have filed my federal and state income tax returns, have filed for an extension of time for filing either my federal or state income tax return or both, or was not required to file either a federal or state income tax return or both."

2

There was no physical evidence presented against any of the candidates that any such tax, or there were any charges pending by any taxing authority be it the Internal Revenue Service, or the Louisiana Department of Revenue. In the case of Mr. Brown, service was made by the Orleans Parish Sherriff at or about 10:30p.m. On the evening of Friday, July 21, 2017 and trial was scheduled for that following Monday, July 24, 2017 at 9:30 a.m. in which Mr. Brown prevailed and the objection was denied. On the 25th of July, 2017 an appeal was filed and was set for oral argument in Louisiana Fourth Circuit Court of Appeal on the 27th of July, 2017. In which, the decision of the lower court was reversed by friends of Mr. ERROLL G. WILLIAMS, specifically PAULA A. BROWN, the Judge who wrote the opinion for the Fourth Circuit Court of Appeals. In rendering a decision in this case on the merits the members of the Fourth Circuit Court of Appeal, totally disregard the Rule of Law, the record of the Lower Court and to a greater extent the Louisiana Constitution. Toeller v. Wis. Dep't of Corrections, 461 F.3d 871,873 (7th Cir. 2006), Marley v United States, 567 F.3d 1030, 1034 (9th Cir. 2008) and subsequently disqualifying Mr. Brown from the ballot. The Louisiana Supreme Court on a writ filed by Mr. Brown denied the case from moving forward.

In the case of Mr. Batiste, eight judges from the Civil District Court of Orleans recused their selves from hearing the case. However, Judge KERN A. REESE, a friend and ally of Judge PAULA BROWN and Mr. Erroll G. Williams took the case and without Mr. Batiste knowledge rendered a verdict against him disqualifying Mr. Batiste from the ballot. There were no other attempts by Mr. Batiste to file an appeal or take any other action in any other court in Louisiana.

Letters were received by Plaintiffs from the Secretary of State, TOM SCHEDLER. Informing Plaintiffs' that their names are no longer on the ballot and will be off the ballot for the October 14, 2017 Local Government Election. Calls were then made to the Secretary of State

3

Legal Department, State Attorney General's Office, and the Civil Right Division of the U.S. Department of Justice asking for a certified copy of the pre-clearance that was submitted to the U.S. Department of Justice for approval as it relates to the law that was used to disqualify us from the ballot. The Non- Payment of State Tax Law, regarding candidates running for public office in Louisiana or any other such laws that would have been enacted in total and willful violation of the Voting Rights Act of 1965. And was told by, LANIE DURIO, Attorney within the Legal Department of the Secretary of State Office Baton Rouge, JEFFREY WALES, Election Division of the Attorney General's Office and EMILY ANDREWS, Deputy Director within the Civil Rights Division of the Attorney General's Office "That there is no such pre-clearance submission on file". The question was also posed to these individuals, why are they violating the Voting Rights Act of 1965 and utilizing these "Jim Crow Law" to keep us off of the ballot?

## ARGUMENT

This case arises out of Mr. Brown and Mr. Batiste signing a Notice of Candidacy and then being disqualified from being on the October 14, 2017 Local Government Election ballot, Based on a piece of Jim Crow Legislation passed in Louisiana, that deals with the nonpayment of state tax regarding candidates running for public office in Louisiana. Not only does this piece of Legislative Act willfully and intentionally violates the Voting Rights Act passed by the U.S. Congress in 1965 and which was still in full force and effect until the U.S. Supreme Court ruling in the case of Shelby County vs. Holder, 570 U.S. 2 (2013).

The reason given for disqualifying us as stated by the Louisiana Fourth Circuit Court of Appeal and the Secretary of State, the Louisiana Constitution grants them no such authority to

disqualify any candidate for such a reason. The action that was taken to disqualify us from the ballot was taken with malicious intent, a blatant disregard for the rule of law and in total violation of the Louisiana Constitution of 1974, Article 1 §10. **Right to Vote; Disqualification from Seeking or Holding an Elective Office**. (B), (1) which states, "Disqualification. The following persons shall not be permitted to qualify as a candidate for elective public office or take public elective office or appointment of honor, trust, or profit in this state:

(1) A person who has been convicted within this state of a felony and who has exhausted all legal remedies, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be a felony and who has exhausted all legal remedies and has not afterwards been pardoned either by the governor of this state or by the officer of the state, nation, government or country having such authority to pardon in the place where the person was convicted and sentenced." Neither plaintiff in this case has any criminal record or conviction.

**The History of the Voting Rights Act of 1965**.

The Voting Rights Act of 1965 "was designed by Congress to banish the blight of racial discrimination in voting." Katzenbach, 383 U.S. at 308. Although the Fifteenth Amendment guaranteed African-American citizens the right to vote as early as 1870, southern states quickly responded by creating a series of voting qualifications and devices to perpetuate black disenfranchisement. See id. At 310-311; see also H.R. Rep. No. 89-439, at 2439-40. None of these new voting legislation mentioned race on its face, but it was nonetheless "motivated entirely and exclusively by a desire to exclude the Negro from Voting. " H.R. Rep. No. 89- 439, at 2443, 2451. Southern states imposed poll taxes, which disproportionately burdened African-Americans as a result of their comparatively lower incomes. See. Id. At 2451-53. They enacted

5

literacy requirements as a precondition to voting "based on the fact that as of 1890... more than two thirds of the adult Negros [in southern states] were illiterate while less than one quarter of the adult whites were unable to read or write. " Katzenbach, 383 U.S. at 311. And they adopted alternate tests, such as grandfather clauses and properly qualifications, in order to "assure that white illiterates would not be deprived of the franchise."

Not only were these tests intentionally discriminatory in their design, but southern voting officials were given unfettered discretion to administer them in a discriminatory fashion. Officials would refuse to accept poll taxes from blacks seeking to pay them, or would withhold poll tax exemption certificates from otherwise qualified black applicants. See H.R. Rep. No. 89-439, at 2452. They would provide whites with "easy versions" of literacy tests or excuse them altogether, but demand that blacks pass "difficult versions... without the slightest error." Katenbach, 383 U.S. at 312-13. Other voting qualifications including the infamous "good morals requirement" and "constitutional interpretation" tests were so inherently "vague and subjective" and they "constituted an open invitation to abuse at the hands of voting officials."

Section 5 of the Voting Rights Act of 1965 ("The Act") prevent "covered" jurisdictions from implementing any change to voting practices or procedures unless and until the jurisdiction demonstrates to federal authorities that the change neither has the purpose nor will have the effect of denying or arbitrating the right to vote on account of race or color. The Voting Rights Act of 1965, employed extraordinary measures to address an extraordinary problem. Section 5 of the Act required States to obtain federal permission before enacting any law related to voting. A drastic departures from basic principles of federalism. And § 4 of the Act applied that requirement only to some States. Louisiana was one of those states to enact tests and methods

6

designed to prevent the participation in voting. In 1965, the covered states included Alabama, Georgia, Louisiana, Mississippi, South Carolina and Virginia. The additional covered subdivisions 39 counties in North Carolina and one in Arizona. SEE, 28 C.F.R. Pt. 51, APP. (2012).

In those jurisdictions, § 4 of the Act banned all such test and devices. § 4(a), 79 Stat. 438. Section 5 provided that no change in voting procedures could take effect until it was approved by the federal authorities in Washington, D.C. either the Attorney General or a court of three judges. Id., at 439. A jurisdiction could obtain such "preclearance" only by proving that the change had neither "the purpose [nor] the effect of denying or abridging the right to vote on account of race or color. Hence, in 1965 Congress decided that, "Sterner and more elaborate measures" were needed to combat the "insidious and pervasive evil which had been perpetrated in certain parts of our country through unremitting and indigenous defiance of the constitution." Katzenbach, 383 U.S. at 309.

**Jim Crow Law**

The law that was used against Mr. Brown and Mr. Batiste, as to disqualify them from actively participating in the Local Government Election on October 14, 2017 is in itself bias, ambiguous, discriminatory and possess a double standard in its application, as stated in the first sentence of paragraph 8 of the Notice of Candidacy, "if I am a candidate for any office other than United States Senator or Representative in Congress". In this sense the law imposes a double standard that a candidate for any other office should have to reveal confidential and private information as a prerequisite just so that one can run for public office. As it relates to the plaintiffs in this case, one did not earn any income within a specified time frame and was not required to file as such. The other, received only disability and is not required to file as such.

To implement a standard by which a person running for public office have to reveal personal information where there is none to be given and take action against that person for not having any documentation to that effect, is not only unconscionable and unreasonable it is also an added burden and in this case also a violation of the provision of H.R. 10612, 94th Congress Public Law 94-455. §1202 (j) (k). **Disclosure of Return and Return Information**.

In an effort to implement these Jim Crow Laws, a subpoena was issued to the Custodian of Record for the Louisiana Department of Revenue. Thereafter, a motion to Quash Subpoena on behalf of the Louisiana Department of Revenue was filed. Where it was outlined "Out of an abundance of caution, this motion to quash is being filed to assert the privilege provide by La. R.S. 47: 1508. Under La. R.S. 47:1508, the records and files of the Department are confidential and privileged, and the Department is prohibited herein from divulging or disclosing any information obtained from such records and files, unless there is an applicable exception provided by law. In fact, if any officer, employee, or agent of the Department complies with the subpoena, he would subject himself to criminal penalties as provided in the aforesaid statues and in La. R.S. 47:1508.1."

A key component of these Jim Crow Laws are the time frame, the particular law in this case was drafted and adopted between 1976 and 2010 a time during which the voting rights act of 1965 was in full force and affect and even if TOM SCHEDLER or JEFF LANDRY can produce any pre-clearance submission to the U.S. Department of Justice, the law as it was drafted was done in willful defiance of the 1965 Voting Rights Act with an intent to discriminate against certain individuals from participating in the political process. A number of jurisdictions have been "bailed out" of Section 5 since the Act's implantation in 1965, by demonstrating to the DOJ

they have effectively left discriminatory voting policies behind them. However, Louisiana is not one of those jurisdictions.

In a publication in the Times Picayune dated Wednesday, February 27, 2013 days before the U.S. Supreme Court was slated to hear arguments in the crucial voting rights act case, TOM SCHEDLER said, "He supports the repeal of the acts key enforcement section. Section five, which mandates federal pre-approval for changes to local voting laws in some states." In another publication dated, Friday, March 30, 2012 addressing concerns on the Secretary of State Facebook page over President Barack Obama's Citizenship and whether or not he should be removed from the November ballot. "The Secretary of State does not have the authority or discretion to investigate, refuse to qualify a candidate, or refuse to place a candidate on a ballot on the grounds that he allegedly does not possess the qualifications for the office he seeks," according to the note, which was signed by William E. Crawford, an attorney for the department. If this is the official statement of TOM SCHEDLER as to his authority to place a candidate on the ballot. Why is it that Mr. Brown and Mr. Batiste are not presently on the ballot?

To further emphasis the level to which these Jim Crow Laws were implemented to discourage and to prevent us from participating in the election process, you can look no further than the time frame to which we have to respond to a challenge. In this instant case we were served Friday evening and had to be in court Monday morning for trial. With no time to consult an attorney or to do any legal research. The laws as it is written only allows you a forty- eight hours to respond to a challenge that deals with general Elections.

## CONCLUSION

The election qualification, prerequisite, standard, practice, and procedures that the state of Louisiana and its political subdivision being the CITY OF NEW ORLEANS subjected us to, are

9

procedures different from that in force or effect on November 1, 1964. This Jim Crow law violates not only the voting rights act of 1965 it also violates the Louisiana constitution to the point of disqualifying us.

## STATEMENT OF DAMAGES

Defendants action in removing Plaintiffs from the ballot were intentional, willful, and with malicious intent of Plaintiff's protected rights to participate in the political arena.

## RELIEF REQUESTED

Wherefore, Plaintiffs respectfully request that this following Relief:

1. Declaratory judgment that defendants policies and practice violate plaintiffs Rights as to participate in the political process as outlined in The Voting Rights Act of 1965.

2. An immediate injunction against Defendants to return Plaintiffs names back on the ballot for the October 14, 2017, Local Government Election.

3. Permanent injunction against all Defendants and their agencies, from utilizing any of the Jim Crow Laws against candidates running for public office.

4. Compensatory Damages against all Defendants in the amount of Ten Million Dollars.

Dated: 9/26/2017

Respectfully Submitted,

**Howard Anthony Brown, Pro Se**
4711 Marque Drive
New Orleans, Louisiana 70127
(504) 251-1203

**Belden Batiste**
1421 North Miro
New Orleans, Louisiana 70119
(504) 872-5056