UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HOWARD ANTHONY BROWN, ET AL.,** <br> **PlaintiffS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-9627** |
| **TOM SCHEDLER, ET AL.,** <br> **Defendants** | **SECTION: "E" (4)** |

## ORDER AND REASONS

Before the Court are two motions to dismiss.[1] Defendant Tom Schedler, in his official capacity as Secretary of State of Louisiana, and Defendant Jeff Landry, in his official capacity as Attorney General of Louisiana, move to dismiss the claims of Plaintiffs Howard Anthony Brown and Belden Batiste under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[2] Because the motions advance the same arguments, the Court will consider them collectively. The motions are opposed.[3]

For the reasons that follow, Defendants' motions to dismiss are **GRANTED**.

## BACKGROUND

On September 26, 2017, Plaintiffs Howard Anthony Brown and Belden Batiste filed a Complaint against Defendants Tom Schedler, the Secretary of State of Louisiana, and Jeff Landry, the Attorney General of Louisiana.[4] Each Plaintiff alleges he filed a notice of candidacy for New Orleans local office for the October 14, 2017 election.[5] Mr. Brown

---

[1] R. Docs. 16, 18.
[2] FED. R. CIV. P. 12(b)(1), 12(b)(6).
[3] R. Docs. 23, 24.
[4] R. Doc. 1. Plaintiffs' Amended Complaint added as Defendants James F. McKay III, Edwin Lombard, Daniel L. Dysart, Rosemary Ledet, Paula A. Brown, and Kern A. Reese. R. Doc. 4. The Court subsequently dismissed Plaintiffs' claims against Defendants McKay, Lombard, Dysart, Ledet, Brown, and Reese as barred by judicial immunity. R. Doc. 36.
[5] R. Doc. 1 at 2.

1

sought the office of Parish Assessor; Mr. Batiste applied for the City Council seat for District D.[6] Plaintiffs allege that challenges were made to their candidacies on the grounds the Plaintiffs falsely certified their personal tax history. Louisiana Revised Statutes § 18:463(A)(2)(a)(iv) requires:

> (2)(a) The notice of candidacy also shall include a certificate, signed by the candidate, certifying all of the following:
> . . .
> (iv) Except for a candidate for United States senator or representative in Congress, that for each of the previous five tax years, he has filed his federal and state income tax returns, has filed for an extension of time for filing either my federal or state income tax return or both, or was not required to file either a federal or state return or both.

Plaintiffs contested the challenges to their candidacies in Louisiana state court. As to Mr. Brown, the Fourth Circuit Court of Appeal rendered a decision on July 28, 2017 reversing a district court ruling which would have allowed his candidacy to go forward.[7] Mr. Brown's subsequent writ application to the Louisiana Supreme Court was denied.[8] As to Mr. Batiste, Judge Kern Reese of the Civil District Court for Orleans Parish entered a judgment disqualifying him from the ballot.[9] Mr. Batiste did not appeal this decision.[10]

Plaintiffs assert the disqualification of their candidacies violated the Voting Rights Act of 1965,[11] Article I, section 10 of the Louisiana Constitution,[12] and Louisiana Revised Statutes § 47:1508.[13] Plaintiffs also contend the state law provisions under which they were disqualified are "bias[ed], ambiguous, discriminatory, and possess a double standard in [their] application." According to the Complaint and the Amended

---

[6] *Id.*
[7] R. Doc. 1 at 3; R. Doc. 4 at 3.
[8] *Id.*
[9] R. Doc. 4 at 3-4.
[10] R. Doc. 1 at 3; R. Doc. 4 at 3-4.
[11] 42 U.S.C. § 1973c (2012).
[12] LA. CONST. ANN. art. I, § 10 ("Right to Vote; Disqualification From Seeking or Holding an Elective Office").
[13] La. R.S. § 47:1508.

Complaint, Plaintiffs seek the following relief: (1) a declaratory judgment that Defendants' policies violate Plaintiffs' right to political participation under the Voting Rights Act; (2) an injunction against Defendants to return Plaintiffs' names to the ballot for the October 14, 2017 election (3) a permanent injunction against all Defendants from using "any of the Jim Crow Laws against candidates running for public office"; and (4) compensatory damages in the amount of ten million dollars.[14]

Defendants Tom Schedler and Jeff Landry now move to dismiss Plaintiffs' claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[15] Defendants first argue Plaintiffs' claims should be dismissed for lack of jurisdiction pursuant to Rule 12(b)(1). Defendants argue that Plaintiffs' claims, to the extent they seek to overturn a final state court judgment, are barred by the *Rooker-Feldman* doctrine. Defendants further argue that Plaintiffs' requested relief is moot, and that Plaintiffs' claims under state law are barred by the Eleventh Amendment to the United States Constitution. Second, Defendants argue Plaintiffs' claims should be dismissed for failure to state a claim pursuant to 12(b)(6). Defendants argue Plaintiffs have failed to state a cause of action under Section 5 of the Voting Rights Act, and that compensatory damages are not available under the Voting Rights Act.[16]

## LEGAL STANDARDS

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims."[17] A motion to dismiss under Federal

---

[14] R. Doc. 1 at 10; R. Doc. 4 at 10.
[15] R. Docs. 16 and 18. *See* FED. R. CIV. P. 12(b)(1); 12(b)(6).
[16] R. Doc. 16-1 at 1-2.
[17] *In re FEMA Trailer Formaldehyde Products Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012).

3

Rules of Civil Procedure 12(b)(1) challenges a federal court's subject-matter jurisdiction.[18] Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[19] "Lack of subject-matter jurisdiction may be found in the complaint alone, the complaint supplemented by the undisputed facts as evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts."[20] "When, as here, grounds for dismissal may exist under both Rule 12(b)(1) and Rule 12(b)(6), the Court should, if necessary, dismiss only under the former without reaching the question of failure to state a claim."[21]

Under Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[22] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[23] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[24] The court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as

---

[18] *See* FED. R. CIV. P. 12(b)(1).
[19] *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted).
[20] *In re FEMA*, 668 F.3d at 287.
[21] *Valdery v. Louisiana Workforce Comm'n*, No. CIV.A. 15-01547, 2015 WL 5307390, at *1 (E.D. La. Sept. 10, 2015).
[22] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[24] *Id.*

factual conclusions will not suffice to prevent a motion to dismiss."[25] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[26]

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[27] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]'—that the pleader is entitled to relief."[28] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[29]

## **LAW AND ANALYSIS**

### I.      Rule 12(b)(1) Motions

Defendants Schedler and Landry move to dismiss Plaintiffs' claims for injunctive relief pursuant to Rule 12(b)(1) on the grounds that (1) Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine, (2) Plaintiff's claims are mooted because Plaintiffs' requested remedy is moot, and (3) Plaintiffs' state law claims are barred by sovereign immunity.

#### A.      *Rooker-Feldman*

Under the *Rooker-Feldman* doctrine, a federal court is deprived of jurisdiction in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[30] "A plaintiff cannot circumvent

---

[25] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[26] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[27] *Twombly*, 550 U.S. at 555.
[28] *Id.* (quoting FED. R. CIV. P. 8(a)(2)).
[29] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (quotations omitted).
[30] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Colum. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983))*.*

5

this jurisdiction by asserting claims not raised in the state court proceedings or claims framed as original claims for relief," if such claims are "'inextricably intertwined' with a state court judgment."[31] Likewise, "litigants may not obtain review of state court actions by filing complaints about those actions in lower federal courts cast in the form of civil rights suits."[32] Indeed, the only federal recourse for constitutional questions arising in state court may be found by applying for a writ of certiorari to the United States Supreme Court.[33]

Plaintiffs ask this Court to overturn the judgments of the Louisiana state courts disqualifying each as a candidate in the October 14, 2017 New Orleans local elections.[34] Plaintiffs complain of injuries caused by state-court judgments, and seek as a remedy "an immediate injunction against Defendants to return Plaintiff[s'] names back on the ballot."[35] Fifth Circuit is precedent is clear, however, this Court "do[es] not have the power to modify or reverse state court judgments."[36]

Further, this Court is without jurisdiction to consider Plaintiffs' Voting Rights Act claim, because *Rooker-Feldman* also bars claims that are "inextricably intertwined with the state court judgment."[37] In such a case, the court is "in essence being called upon to review the state-court decision, and the originality of the district court's jurisdiction precludes such a review."[38] In *Liedtke v. State Bar of Texas*, the Fifth Circuit held the

---

[31] *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994) (quoting *Feldman*, 460 U.S. at 482 n.16)); *see also Carter v. Deutsche Bank Nat. Trust Co.*, No. 10-797, 2010 WL 3074323, at *2 (E.D. La. Aug. 2, 2010) (Vance, J.).
[32] *Hale v. Harney*, 786 F.2d 688, 690-91 (5th Cir. 1986).
[33] *See Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994).
[34] R. Doc. 1 at 10 (stating Plaintiffs' requested relief is "an immediate injunction against Defendants to return Plaintiffs['] names back on the ballot").
[35] R. Doc. 1 at 10.
[36] *Union Planters Bank Nat. Ass'n v. Salih*, 369 F.3d 457 (5th Cir. 2004).
[37] *Liedtke*, 18 F.3d at 317.
[38] *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994).

district court lacked jurisdiction over a 42 U.S.C. § 1983 claim arising from a disbarment by the Texas State Bar, as the plaintiff's "request for declaratory and injunctive relief, stripped to its essentials, [was] an attack on the judgment of the state district court."[39] As a result, plaintiff's sole recourse was with the state appellate courts, and thereafter, with the United States Supreme Court.[40] In this case, Defendant Schedler argues, "the complaint itself shows the interrelation . . . of the damage[s] claim to the state court judgments."[41] The Court agrees. Plaintiffs' claims for relief, even though framed as a violation of federal law, nevertheless invite this Court to review the state court judgment. Accordingly, Plaintiffs' federal claims are "inextricably intertwined" with the state court judgment, and this Court lacks subject matter jurisdiction over Plaintiffs' claims for injunctive relief.

    B.    <u>Mootness</u>

The Court also lacks jurisdiction to consider Plaintiffs' request for injunctive relief because the claim is moot.[42] "Generally, a request for an injunction is moot "upon the happening of the event sought to be enjoined."[43] The Fifth Circuit has held in several election-law cases that when the relevant election has passed, claims seeking injunctive relief to return a candidate's name to a ballot, or to prevent the election, are moot.[44] In this case, Plaintiffs seek "an immediate injunction against Defendants to return

---

[39] *Liedtke*, 18 F.3d at 317.
[40] *Id.* at 317-18.
[41] R. Doc. 16-1 (quoting Amended Complaint, R. Doc. 4, at 10 ("Defendant[s'] action in removing Plaintiffs from the ballot were intentional, willful and with malicious intent of Plaintiffs' protected rights to participate in the political arena.")).
[42] A suit may become moot only as to a particular form of relief. Therefore, the Court separately analyzes mootness as to the specific claims alleged. *See Henschen v. City of Houston*, 959 F.2d 584, 587 (5th Cir. 1992).
[43] *Wilson v. Birnberg*, 667 F.3d 581 (5th Cir. 2012) (quoting *Harris v. City of Houston*, 151, F.3d 186, 189 (5th Cir. 1998).
[44] *See Wilson*, 667 F.3d at 585. *Smith v. Winter*, 782 F.2d 508, 510 (5th Cir. 1986).

Plaintiff[s'] names back on the ballot for the October 14, 2017, Local Government Election."[45] This election has passed. As a result, "claims solely supporting that remedy are moot."[46]

Plaintiffs assert in their opposition to Defendant Schedler's motion to dismiss that their requested relief "is not to replace the names for that day in time," but "for the names to be replaced for that date as it was supposed to be before the names were removed without cause. In other words, a special Election."[47]

Even accepting Plaintiffs' amendment of their claim, "a court will only invalidate an election in exceptional circumstances, usually when there has been egregious defiance of the Voting Rights Act."[48] Plaintiffs have not made a claim of such "egregious or invidious discrimination" that would make judicial invalidation of the 2017 election appropriate.[49] Accordingly, Plaintiffs' claims for injunctive relief are moot.

### C. Sovereign Immunity

The Eleventh Amendment prohibits an action by a private individual in federal court against a sovereign state and its agencies and officials unless specifically abrogated by Congress pursuant to its legal authority under Section V of the Fourteenth Amendment or by consent of the state.[50] Although the language of the Eleventh Amendment does not specifically address suits against a state by its own citizens, the Supreme Court has consistently held that "an unconsenting State is immune from suits brought in federal

---

[45] R. Doc. 1 at 10. R. Doc. 4 at 10.
[46] *Wilson*, 667 F.3d at 595.
[47] R. Doc. 24-1 at 3.
[48] *Wilson*, 667 F.3d at 597 (quoting *Lopez v. City of Houston*, 617 F.3d 336, 340 (5th Cir. 2010).
[49] *Lopez*, 617 F.3d at 340.
[50] *See Seminole Tribe of Fl. v. Florida*, 517 U.S. 44 (1996); *Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000)).

court by her own citizens as well as citizens of other states.[51] Furthermore, the Eleventh Amendment "extends to actions against state agencies or entities that are classified as 'arms of the state.'"[52] The State of Louisiana has not waived its sovereign immunity under the Eleventh Amendment such that it has consented to be sued in federal court. In fact, Louisiana explicitly maintains its sovereign immunity by statute.[53] As a result, Louisiana agencies or entities acting in their official capacities are immune from suit by Louisiana citizens in federal court.[54]

In opposition to Defendants' motions, Plaintiffs argue their claim falls into the *Ex Parte Young* exception to Eleventh Amendment immunity.[55] Pursuant to *Ex Parte Young*, plaintiffs may raise claims against state officials in their official capacity in order to enjoin enforcement of an unconstitutional state statute.[56] For *Ex Parte Young* to apply, the "suit must be brought against individual persons in their official capacities as agents of the state and the relief sought must be declaratory or injunctive in nature and prospective in effect."[57] Further, after the Supreme Court's ruling in *Pennhurst State School & Hosp. v. Halderman*, plaintiffs may not sue state officials in federal court for violations of state law.[58]

---

[51] *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). *See* also *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974)).
[52] *Id.* (citing *Regents of the Univ. of Ca. v. John Doe*, 519 U.S. 425, 429 (1997); *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002)).
[53] LA. REV. STAT. § 13:5106 ("No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court."). *See also Citrano v. Allen Correctional Ctr.*, 891 F. Supp. 312, 320 (W.D. La. 1995) ("The State of Louisiana has waived sovereign immunity in tort contract suits but it has not waived its immunity under the Eleventh Amendment from suit in federal court.").
[54] The State of Louisiana is not a named defendant in this case. Defendants Tom Schedler and Jeff Landry are sued in their official capacities as Secretary of State and Attorney General.
[55] R. Doc. 23-1 at 4.
[56] 209 U.S. 123 (1908). *See also Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001).
[57] *Aguilar v. Tex. Dep't of Crim. Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998).
[58] 465 U.S. 89, 106 (1984).

Plaintiffs seek to enjoin the enforcement of "any of the Jim Crow Laws against candidates running for public office,"[59] alleging several violations of Louisiana state law. Specifically, Plaintiffs contend Defendants violated Article I, Section 10 of the Louisiana Constitution, which declares "Every citizen of the state, upon reaching eighteen years of age, shall have the right to register and vote," and declares that felons are disqualified from holding public office.[60] Plaintiffs also suggest the Defendants violated Louisiana Rev. Stat. § 47:1508, which governs the confidentiality of tax records.[61]

To the extent Plaintiffs assert an *Ex Parte Young* claim based on violations of state law, those claims are barred by the Eleventh Amendment.[62] Defendants' 12(b)(1) motions to dismiss are therefore granted.

## II. Rule 12(b)(6) Motions

### A. Voting Rights Act

Section 5 of the Voting Rights Act prevents certain "covered" jurisdictions from implementing any change to voting practices or procedures unless and until the jurisdiction demonstrates to federal authorities that the change "neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color."[63] This is termed "preclearance."[64] "Generally, actions by private individuals seeking declaratory and injunctive relief against violations of § 5 must be referred to a three-judge court for the determination of whether the political subdivision has adopted

---

[59] R. Doc. 4 at 10. Although the Amended Complaint repeatedly refers to plural "Jim Crow Laws," Plaintiffs only discuss La. R.S. 18:463(A)(2), and so the Court interprets the Amended Complaint to challenge only La. R.S. 18:463(A)(2).
[60] LA. CONST. ANN. art. I, § 10.
[61] LA. REV. STAT. § 47:1508
[62] *See Pennhurst*, 465 U.S. at 106.
[63] 42 U.S.C. § 1973c.
[64] *Id.* at 537.

10

a change covered by § 5 without first obtaining preclearance."[65] However, if a plaintiff's claims are "wholly insubstantial" or "completely without merit," a single judge may dismiss the claims without convening a three-judge court.[66]

Plaintiffs seek a declaratory judgment that Defendants' "policies and practice"—which the Court interprets to mean the enforcement of La. R.S. 18:463(A)(2), the law under which Plaintiffs' local government candidacies were terminated—violate their rights under the Voting Rights Act.[67] Although the Amended Complaint is unclear on this point, Plaintiffs seem to assert that Louisiana failed to obtain federal preclearance for La. R.S. 18:463(A)(2).[68] Plaintiffs further argue that, even if Louisiana obtained preclearance for La. R.S. 18:463(A)(2), "the law as it was drafted was done in willful defiance of the 1965 Voting Rights Act with an intent to discriminate against certain individuals."[69] According to Plaintiffs, the state statute "imposes a double standard" by requiring candidates to reveal "confidential and private information" regarding their income in order to run for public office. Plaintiffs assert that, because they had no income to report, the termination of their candidacies based on the failure to disclose their financial information was unlawful.[70]

Defendants move to dismiss any claims under the Voting Rights Act on the grounds that Plaintiffs have failed to state a cause of action upon which relief can be granted.[71] Defendants argue that the Supreme Court's decision in *Shelby County, Alabama v.*

---

[65] *League of United Latin American Citizens of Texas v. State of Texas*, 113 F.3d 53, 55 (5th Cir. 1997).
[66] *Id.* (citing *United States v. Saint Landry Parish Sch. Bd.*, 601 F.2d 859, 863 (5th Cir. 1979).
[67] R. Doc. 4 at 10. The Court interprets "policies and practice" to refer to La. R.S. 18:463(A)(2)(a)(iv), the Louisiana state statute pursuant to which the Plaintiffs' candidacies were disqualified.
[68] R. Doc. 4. At 8-10.
[69] *Id.* at 9.
[70] R. Doc. 4 at 8 ("[t]o implement a standard by which a person running for public office have to reveal personal information where there is none to be given and take action against that person for not having any documentation to that effect, is not only unconscionable and unreasonable it is also an added burden").
[71] R. Doc. 16-1 at 15; R. Doc. 18-1 at 6. FED. R. CIV. P. 12(b)(6).

11

*Holder*[72] blocks Plaintiffs' claim under § 5. In that case, the Supreme Court declared unconstitutional § 4(b) of the Voting Rights Act, which established the coverage formula according to which § 5 is enforced.[73] As other courts have noted, *Shelby County* effectively "immobilized" § 5's preclearance requirement, because, without § 4, there is no way to determine what jurisdictions are covered by § 5.[74]

Defendants make two arguments. First, Defendants assert La R.S. 18:463(A)(2) was administratively precleared in 2010, the same year it was enacted into law.[75] Second, Defendants argue that *Shelby County* should be applied retroactively, barring § 5 litigation for state statutes passed prior to the Court's decision. The Court addresses each argument in turn.

B.  Preclearance

To the extent Plaintiffs challenge whether La. R.S. 18:463(A)(2) met the preclearance requirement, Defendant Landry attached to his motion correspondence demonstrating that preclearance was properly obtained. According to an August 4, 2010 letter from Erin C. Day, Assistant Attorney General of the State of Louisiana, to T. Christian Herren, Chief of the Voting Rights Section of the U.S. Department of Justice, the Louisiana Department of Justice properly submitted the relevant legislation to federal authorities for evaluation.[76] In his subsequent letter in response, Mr. Herren stated the Attorney General "[did] not interpose any objection" to the proposed legislation.[77]

---

[72] 570 U.S. 529 (2013).
[73] *Id.* at 550-58.
[74] *See Hall v. Louisiana*, 973 F.Supp. 2d 675, 682 (M.D. La. 2013) (quoting *Shelby County v. Holder*, 540 U.S. 529, 559 (2013) (Ginsburg, J., dissenting).
[75] R. Doc. 18-1 at 10.
[76] R. Doc. 18-3 at 2 (Letter from Erin C. Day, Assistant Attorney General, State of Louisiana, to T. Christian Herren, Jr., United States Department of Justice, (Aug. 4, 2010)).
[77] Doc. 18-3 at 1 (Letter from T. Christian Herren, Jr., United States Department of Justice, to Erin C. Day, Assistant Attorney General, State of Louisiana, (Oct. 12, 2010)).

12

Accordingly, any argument that Louisiana failed to obtain preclearance for La. R.S. 18:463(A)(2) is without merit.

C. Retroactivity

Even if Louisiana failed to obtain preclearance for La. R.S. 18:463(A)(2), however, Defendants argue the rule announced in *Shelby County* applies retroactively, barring Plaintiffs' claims under § 5 even though the Louisiana statute was enacted into law three years prior to *Shelby County*.[78]

Although the *Shelby County* Court was silent on the question of the decision's retroactive effect, several courts have held that *Shelby County* applies retroactively, barring § 5 challenges to laws passed when pre-*Shelby* preclearance requirements were in place.[79] For example, in *Thompson v. Attorney General of Mississippi*, the Southern District of Mississippi considered a petition for injunctive relief by Rickey Thompson, who sought to have his name returned to the ballot in a judicial election in Lee County, Mississippi.[80] Thompson had been the first African-American elected Justice Court Judge in Lee County, but had been removed from office pursuant to state law § 9-19-7, which made him permanently ineligible to serve as Judge in Mississippi.[81] Thompson asserted the state law violated § 5 of the Voting Rights Act because it had not been precleared by

---

[78] R. Doc. 16-1 at 15-16; R. Doc. 18-1 at 7-8. The Supreme Court established the general rule for retroactivity in civil cases in *Harper v. Virginia Dep't of Taxation*: "When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." 509 U.S. 86, 97 (1993).
[79] *See Thompson v. Attorney General of Mississippi*, 129 F. Supp. 3d 430, 436 (S.D. Miss. 2015); *Hall v. Louisiana*, 974 F. Supp. 2d. 978 (M.D. La. 2013); *Bird v. Sumpter County Bd. Of Educ.*, 2013 WL 5797653 (M.D. Ga. 2013) ("Nothing in the *Shelby County* decision precludes the retroactive effect typically afforded judicial decisions").
[80] *Thompson v. Attorney General of Mississippi*, 129 F. Supp. 3d 430, 436 (S.D. Miss. 2015).
[81] *Id.* at 432.

13

the Department of Justice.[82] The court found that *Shelby County* barred Thompson's claim, even though the Mississippi state law was passed long before § 4(b) of the Voting Rights Act was ruled unconstitutional, concluding, "the result of *Shelby County* is that § 5 cannot be enforced at all."[83] Citing Justice Ginsburg's dissent in that case, the court determined that *Shelby County* stopped "any application of § 5 by holding that § 4(b)'s coverage formula is unconstitutional."[84] Accordingly, the court denied his request for injunctive relief.

Similarly, in *Hall v. Louisiana*, the plaintiff alleged the Judicial Election Plan for Baton Rouge, Louisiana, violated § 5, among other federal laws.[85] Plaintiff sought an injunction voiding the results of two 2012 elections and an order requiring Defendants to seek preclearance for voting changes alleged to have occurred. The court denied the request for injunctive relief and dismissed Plaintiff's claims under § 5, finding that "the Supreme Court's holding in *Shelby County* must be retroactively applied to all of [plaintiff's] Section 5 claims, including those claims that are based on actions that allegedly occurred before Congress's reauthorization of the Voting Rights Act in 2006."[86]

This Court finds, consistent with other district courts in this circuit, that *Shelby County* precludes suits to enforce § 5's preclearance requirement as to "all events, regardless of whether such events predate or postdate" the Court's decision.[87]

---

[82] The parties did not dispute that Mississippi neither sought nor received preclearance prior to its enactment in 1980. *Id.* at 433.
[83] *Id.* at 435.
[84] *Id.* at 436.
[85] 973 F. Supp. 2d 675 (M.D. La. 2013). The Judicial Election Plan was enacted by the Louisiana State Legislature in 1993. *Id.*
[86] *Id.* at 683-84.
[87] *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993).

Accordingly; the Court grants Defendants' 12(b)(6) motions to dismiss with regard to Plaintiffs' claims under the Voting Rights Act.

## IV. Compensatory Damages

Finally, Plaintiffs seek compensatory damages in the amount of ten million dollars.[88] Defendants correctly argue that section 5 of the Voting Rights Act does not allow for an award of money damages.[89] Accordingly, Plaintiffs' claim for compensatory damages is dismissed.

## CONCLUSION

**IT IS ORDERED** that the Defendants' motions to dismiss for failure state a claim and/or motions to dismiss for lack of jurisdiction[90] are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 3rd day of May, 2018.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[88] R. Doc. 4 at 10.
[89] R. Doc. 16-1 at 16; R. Doc. 18-1 at 10 (citing *Vondy v. White*, 719 F.2d 1265, 1266 (5th Cir. 1983) ("section 1973c does not authorize the award of damages—the only remedy sought here"); *Foreman v. Dallas County, Tex.*, 990 F. Supp. 505, 512 (N.D. Tex. 1998)).
[90] R. Docs. 16, 18.